815 So.2d 809 (2002)
STATE of Louisiana
v.
Antonio JOHNSON.
No. 2001-KK-2081.
Supreme Court of Louisiana.
April 26, 2002.
*810 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Scott D. Peebles, for Applicant.
Saundra D. Alessi, Baton Rouge, for Respondent.
PER CURIAM.
The order of the court of appeal denying the state's application for supervisory review is reversed, the ruling of the district court granting respondent's motion to suppress is vacated, and this case is remanded for further proceedings.
Testimony at the hearing conducted on respondent's motion to suppress revealed that just after midnight On December 11, 2001, Officer Bryant Louis and his partner spotted respondent and a companion walking in the 2500 block of Thalia Street through one of the courtyards of the Melpomene Housing Development in New Orleans. The officers were conducting a routine patrol of an area known to them as a hot spot of narcotics activity by trespassers coming into the housing development. According to Louis, as the officers approached in their marked unit to one side of respondent and his companion, the two men "significantly picked up their pace," heading towards a crossover which led to another courtyard. They were "nearly running" and looked over their shoulders repeatedly at the officers. Louis concluded that the two men were attempting to elude the officers by crossing over into a *811 courtyard to which the police lacked access in their patrol unit. The officers stopped respondent and his companion before they reached the crossover and ordered them to place their hands on the hood of the patrol unit. As Louis began pulling on gloves to conduct a pat down search, respondent removed his left hand from the hood of the patrol unit and dropped a shiny object to the pavement. Louis heard the sound of glass hitting a hard surface and retrieved the object, a glass tube commonly used as a "straight shooter" crack cocaine pipe. He then placed respondent under arrest for possession of cocaine in violation of La.R.S. 40:967(C).
In affirming the trial court's grant of the motion to suppress, the court of appeal observed that Louis "plainly testified that neither Mr. Johnson nor his companion fled from the officers, or even changed their direction of travel; they just began walking more quickly." State v. Johnson, 01-0640, p. 1 (La.App. 4th Cir.7/3/01), ___ So.2d ___ (unpub'd). The court of appeal thereby distinguished the decision in Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), which recognized that flight of an individual through a high crime area may provide the police with reasonable grounds for an investigatory stop because "[h]eadlong flightwherever it occursis the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."
In determining whether the police possessed the requisite "`minimal level of objective justification'" for an investigatory stop based on reasonable suspicion of criminal activity, United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)), reviewing courts "must look at the `totality of the circumstances' of each case," a process which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, ___, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)(quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The assessment by a reviewing court of the cumulative information known to the officers avoids a "divide-and-conquer analysis" by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear "readily susceptible to an innocent explanation." Arvizu, 534 U.S. at ___, 122 S.Ct. at 751.
In the present case, as the court of appeal observed, Officer Louis's testimony did not describe "headlong" flight by the defendant and his companion. However, Louis did testify that respondent had quickened his pace to a "near run" and that he and his companion had looked repeatedly over their shoulders in the officers' direction as they headed to the crossover leading into another courtyard. In Louis's opinion, the two men were attempting to cut off the officers by taking the crossover into a courtyard where the patrol unit could not follow. Giving due deference to that deduction by a trained police officer, we conclude that in the context of the other circumstances known to the officer, including the lateness of the hour, the high crime character of the area, and the nervous demeanor of the two men reflected in their repeated glances over their shoulders, respondent's evasive conduct provided the minimal objective justification for an investigatory stop. Louis then lawfully retrieved the crack cocaine pipe dropped by respondent before the officer could pull on his gloves to conduct a *812 pat down search. State v. Tucker, 626 So.2d 707, 710 (La.1993)("If ... a citizen abandons or otherwise disposes of property prior to any unlawful intrusion into the citizen's right to be free from governmental interference, then such property may be lawfully seized and used against the citizen in a resulting prosecution.").
The trial court therefore erred in granting respondent's motion to suppress the evidence. Accordingly, that order is set aside and this case is remanded to the district court for further proceedings consistent with the views herein.
REVERSED AND REMANDED.
WEIMER, J. concurs with additional reasons.
JOHNSON, J. dissents and assigns reasons.
CALOGERO, C.J. dissents and assigns reasons.
CALOGERO, Chief Justice dissents and assigns reasons.
In Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the United States Supreme Court recognized that unprovoked flight as well as nervous, evasive behavior are factors in establishing reasonable suspicion to support an investigatory stop. However, in the instant case, the state demonstrated only that the men "picked up their pace" when the officers began to follow them. Because I do not believe that increasing one's pace constitutes flight or evasive behavior, I disagree that respondent's behavior justified an investigatory stop. Furthermore, considering its great discretion in granting the motion to suppress, I would respect the decision of the trial court and uphold its granting of the motion to suppress. For these reasons, I respectfully dissent from the majority opinion.
JOHNSON, J., Dissents and assigns reasons.
I would affirm the decisions of the lower courts to suppress the evidence in this case as it was obtained as a result of an illegal stop in violation of the defendant's rights under the Fourteenth Amendment.
The lower courts correctly found that the police officers lacked a reasonable articulable suspicion to conduct the stop under the circumstances of this case. I agree with the court of appeal that the facts of this case are distinguishable from those described in Illinois vs. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), upon which the majority relies. Unlike the defendant in Wardlow, the defendant in the present case did not "flee" from the police officers. As noted by the court of appeal, the officer plainly testified that neither the defendant nor his companion "fled" from the officers, or even changed their direction of travel; they simply began walking more quickly when the officers turned on their unit's spotlight.
The evidence reveals that the defendant and his companion were stopped because they were walking in a public housing development at night, an area "known for violence and drugs," according to the officers' testimony and because they quickened their pace.
We seem to throw out all the rules when defendants live in "high crime areas." Chasing down citizens to see whether they have illegal drugs would not be tolerated in the affluent neighborhoods of our State and should not be tolerated anywhere in a civilized society.
WEIMER, J., concurring.
I concur for the following reasons.
At oral argument, substantial discussion arose as to whether the police had provoked *813 defendant's "flight" by shining a spotlight on him and his companion who were walking in the high crime area. Neither the district court nor the court of appeal discussed the spotlight. A review of the officer's testimony at the motion to suppress hearing reveals the officers turned on their unit's spotlight for illumination of the area, which was so dark the officers could not determine the race of the men. On cross examination by defense counsel, the officer admitted the two men were walking along doing nothing "until they noticed the approach of the marked police unit." The officer then stated the two men "increased their pace once they observed us approaching." Thus, it is unclear from the testimony whether the increased pace of the men and their suspicious actions of looking around occurred prior to or after the spotlight was illuminated. The record does not support the contention that the spotlight was pointed directly at the defendant.
While it is appropriate for police to turn on lights to illuminate an area for observation, the police cannot purposely engage in activity specifically designed to provoke evasive behavior and then use that behavior to form the basis of reasonable suspicion. Counsel for defendant contends the police put a spotlight on the defendant and his companion in a dark area, and it was this action of the police using a spotlight that provoked the two men to react reasonably in picking up the pace of their walk. Simply, the evidence is insufficient to establish that the police purposefully acted to provoke the defendant's evasive behavior. United States Supreme Court cases have recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion to support an investigatory stop. See cases cited in Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). The Supreme Court has cautioned that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Id., 528 U.S. 119 at 125, 120 S.Ct. at 676, 145 L.Ed.2d 570.