KIMBALL, C.J.
_JjWe granted certiorari in this case to determine whether the court of appeal erred in granting the defendant’s motion to suppress evidence after finding the defendant’s unprovoked flight from an officer at 1:45 a.m. in a dimly lit, low-crime area did not justify a police officer’s investigatory stop of the defendant. For the reasons discussed herein, we reverse the court of appeal and conclude the officer had reasonable suspicion to conduct the stop.
FACTS AND PROCEDURAL HISTORY
At approximately 1:45 a.m. on April 14, 2008, Sergeant Greg Brown of the Baker Police Department was patrolling Groom Road in Baker, Louisiana. While traveling eastbound on Groom Road, Sergeant Brown observed the defendant, Johnny Morgan, in a dimly lit area walking toward him, traveling westbound on Groom Road. According to Sergeant Brown, it was cool outside, approximately 55 degrees, and the defendant was wearing a blue, hooded jacket and white cargo pants. Sergeant Brown testified that upon seeing the marked patrol unit, the defendant immediately turned and ran in the opposite direction. Sergeant Brown chased the defendant for several blocks before finally stopping him near McVea Street, which is around the |2corner from Groom Road. Sergeant Brown then ordered the defendant to stand in front of his patrol unit. During the approximately one- or two-minute interview, the defendant appeared very nervous, looking down and away from the sergeant and repeatedly putting his hands in his pockets. Sergeant Brown also noted that although it was cool outside, the defendant was sweating. Because of the defendant’s nervous behavior, Sergeant Brown shined his flashlight around the defendant’s waist and saw a hollowed-out, *405 blue ink pen, which, was burned at one end and clipped to the defendant’s right, front pants pocket. Based upon his training and experience with narcotics, Sergeant Brown immediately recognized the pen as a crack pipe, seized it, and placed the defendant under arrest. After giving the defendant a Miranda warning, Sergeant Brown conducted a search incident to the arrest and found crack cocaine in the defendant’s right, rear pants pocket.
The defendant was charged by bill of information with one count of possession of illegal narcotics pursuant to La. R.S. 40:967(C)[1] (Possession of a Schedule II Controlled Dangerous Substance: Cocaine) and one count of possession of illegal ladrug paraphernalia pursuant to La. R.S. 40:1023(C).[2] The defendant filed a Motion to Suppress the crack pipe and the crack cocaine, arguing they were seized during an illegal search and seizure because Sergeant Brown did not have reasonable suspicion that the defendant had committed a crime. Thus, the defendant claims Sergeant Brown violated his rights under the Louisiana and the United States Constitutions.
At the hearing on the Motion to Suppress, Sergeant Brown was the only witness who testified, establishing the aforementioned facts. On April 20, 2009, the trial judge denied the defendant’s Motion to Suppress, finding the defendant’s conduct was suspicious and Sergeant Brown had a right to stop him to find out what was going on. Defense counsel orally gave notice of his intent to seek writs and filed an application to the court of appeal on May 20, 2009. On September 29, 2009, the Louisiana First Circuit Court of Appeal granted the defendant’s writ application, reversed the trial court’s ruling, and remanded the matter for further proceedings. The First Circuit, citing State v. Benjamin, 97-3065 (La. 12/1/98); 722 So.2d 988, concluded that flight from a police officer alone, without something more, will not provide justification for a stop. Thereafter, the state filed a writ application with this Court, which was granted on November 12, 2010. State v. Morgan, No. 09-2352 (La.11/12/10); 49 So.3d 874.
DISCUSSION
Article I, Section 5 of the Louisiana Constitution of 1974 as well as the Fourth Amendment to the United States Constitution protect individuals from unreasonable ^searches and seizures. Under these provisions, ■ and as a general rule, a search warrant is required to conduct a constitu *406 tionally permissible search. Over time, however, the United States Supreme Court has carved out several exceptions to the warrant requirement that justify war-rantless searches in limited circumstances. In Terry v. Ohio, the Supreme Court held that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. 892 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). To satisfy the reasonableness requirement of the Fourth Amendment, police officers conducting an investigatory stop must have a reasonable suspicion supported by articulable facts that criminal activity “may be afoot.” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing Terry, 392 U.S. at 30, 88 S.Ct. at 1884).
Although reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment requires some minimal level of objective justification for making the stop. Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585. In Terry, the Supreme Court held, “in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticular-ized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” 392 U.S. at 27, 88 S.Ct. at 1883. The Supreme Court' further explained that officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that “might well elude an untrained person.” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002) (citing United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges and local law enforcement officers. Id. (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).
Because reasonable suspicion is not readily defined, the Supreme Court has held that courts reviewing the legality of an investigatory stop must consider the totality of the circumstances of each case to see whether the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. Sokolow, 490 U.S. at 7-8, 109 S.Ct. at 1585 (citing Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Cortez, 449 U.S. at 417, 101 S.Ct. at 695). When applying the totality of the circumstances test, the Supreme Court considers several factors particularly relevant, including the location and time of the stop, as well as the defendant’s actions preceding the stop. Although an individual’s presence in a “high-crime area,” alone, is insufficient to support a reasonable suspicion of criminal activity, the Supreme Court has held that a location’s characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (citing Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); Adams v. Williams, 407 U.S. 143, 144, 147-48, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972)). An individual’s nervous, evasive behavior is also a pertinent factor in determining whether an officer had reasonable suspicion. Ward-low, 528 U.S. at 124, 120 S.Ct. at 676 (citing United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); Florida v. Rodriguez, 469 U.S. 1, 6, 105 S.Ct. 308, 311, 83 *407 L.Ed.2d 165 (1984); Sokolow, 490 U.S. at 8-9, 109 S.Ct. at 1586),
| ,jln Illinois v. Wardlow, the Supreme Court held that unprovoked flight by an individual in a high-crime area is sufficient to give police officers reasonable suspicion of criminal activity. 528 U.S. at 124, 120 S.Ct. at 676. Although the Supreme Court refused to adopt a per-se rule regarding, whether flight from police officers, alone, can justify an investigatory stop, it indicated that flight from a police officer plays a major role in the totality of the circumstances analysis. This is evident from the Supreme Court’s declaration that:
Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.... Flight, by its very nature, is not “going about one’s business”; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual’s right to go about his business or to stay put and remain silent in the face of police questioning.
Id. at 124-125, 120 S.Ct. at 676. Federal courts consistently refer to Wardlow as authority for finding reasonable suspicion based upon' a defendant’s unprovoked flight from a high-crime area.[3] Additional factors considered by reviewing courts include the “lateness of the |7hour,” [4] whether an area is dimly lit,[5] and the nature of the defendant’s flight.[6]
The Terry exception to the warrant requirement has been adopted by this Court and codified in Louisiana Code of Criminal Procedure article 215.1.[7] See *408 State v. Chopin, 372 So.2d 1222, 1224 (La.1979) (citing State v. Drew, 360 So.2d 500 (La.1978); State v. Robinson, 342 So.2d 183 (La.1977)). We have held that an investigatory stop must be based upon reasonable cause to believe the individual is, | Shas been, or is about to be, engaged in criminal conduct. State v. Belton, 441 So.2d 1195, 1198 (La.1983) (citing State v. Andrishok, 434 So.2d 389 (La.1983); Chopin, 372 So.2d at 1224). We have also held that reviewing courts must look at the totality of the circumstances when determining whether a police officer had reasonable cause to stop a defendant. Belton, 441 So.2d at 1198 (citing Cortez, 449 U.S. at 417, 101 S.Ct. at 695); State v. Johnson, 01-2081 (La.4/26/02); 815 So.2d 809, 811; State v. Benjamin, 97-3065 (La.12/1/98); 722 So.2d 988, 989. Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, we have held that this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198 (citing State v. Williams, 421 So.2d 874 (La.1982); State v. Wade, 390 So.2d 1309 (La.1980)).
However, in several cases, we have expressly held or at least implied that the defendant’s flight from police officers is the most important factor in the totality of the circumstances analysis. In State v. Lewis, we specifically held that, “the totality of the circumstances known to the officer at the time, including the residents’ complaints of drug activity, the ‘hot spot’ nature of the area, respondent’s nervousness, and, most importantly, his unprovoked headlong flight from the officer, gave rise to reasonable suspicion for an investigatory detention.” 00-3136 (La.4/26/02); 815 So.2d 818, 821 (emphasis added); cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002). Similarly, in State v. Belton, we held that the defendant’s flight from the approaching officers, in addition to the other facts known by the officers at the time, was sufficiently suspicious to justify an investigatory stop. 441 So.2d at 1199. We used identical language in State v. Johnson, when we held that the defendant’s evasive behavior in quickening his pace to a “near run,” in the 19context of the other circumstances known to the officer, including the lateness of the hour, the high-crime character of the area, and the defendant repeatedly glancing over his shoulder, provided the minimal objective justification for an investigatory stop. 01-2081 (La.4/26/02); 815 So.2d 809, 811. We even found reasonable suspicion in State v. Benjamin, where the only factor in addition to the defendant’s flight was the fact that he clutched his waistband as if he were supporting a weapon or contraband. 97-3065 (La.12/1/98); 722 So.2d 988, 989.
Further supporting this notion is our recognition that although flight, alone, is insufficient to support a finding of reason *409 able suspicion, “Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.” Id. (citing Belton, 441 So.2d at 1195). We have further found that an even greater level of suspicion attaches to unprovoked flight because it is not a mere refusal to cooperate or an assertion of one’s right to walk away. State v. Alvarez, 09-0328 (La.3/16/10); 31 So.3d 1022, 1024. In Alvarez, we held that, “allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual’s right to go about his business or to stay put and remain silent in the face of police questioning.” Id. (citing Wardlow, 528 U.S. at 125, 120 S.Ct. at 676). We subsequently concluded that when a defendant’s unprovoked flight is added to several other factors, it provides officers with reasonable suspicion to investigate further and initiate an investigatory stop. Id. Thus, a defendant’s flight, especially when unprovoked, appears to be the crucial factor in the reasonable suspicion analysis.
Another important factor in the analysis is a trained officer’s inferences and deductions made regarding a defendant’s actions and the cumulative information |inavailable to him at the time of the stop. Johnson, 815 So.2d at 811 (citing Arvizu, 534 U.S. at 273, 122 S.Ct. at 750-51). In Johnson, we gave “due deference” to an officer’s deductions that the defendant was trying to cut him off by quickening his pace to a “near run,” repeatedly looking over his shoulder in- the officer’s direction, and heading toward an area where the police could not follow him. Id. Other relevant factors in determining whether there was reasonable, suspicion for an investigatory stop include the “lateness of the hour,”[8] whether the area was dimly lit,[9] and whether the stop occurred in a high-crime area.[10]
ANALYSIS
The issue before this Court is whether Sergeant Brown had reasonable suspicion to conduct an investigatory stop of the defendant, which subsequently led to the defendant’s arrest when the officer saw a crack pipe in plain view on the defendant’s person. In determining whether there was reasonable suspicion to seize the defendant in this case, we.must look at the totality of the circumstances. State v. Belton, 441 So.2d at 1199. Sergeant Brown,, the only witness who testified at the hearing on the Motion to Suppress, said that he first saw the defendant walking toward him on Groom Road and, upon seeing the marked police unit, the defendant began to run away at a fast pace. Although he did not witness the defendant commit any crime, Sergeant Brown decided to stop and detain the defendant because he had a hunch the defendant was “up to no good,” based upon the defendant “running and |T1being evasive, at *410 the time of the hour in a poor lit [sic] area.” Thus, Sergeant Brown believed these three factors — the time, the lighting, and the defendant’s unprovoked flight for several blocks — were sufficient to support a reasonable suspicion of criminal activity. However, Sergeant Brown also testified that the area where the stop occurred was not a high-crime area. This Court has not previously spoken on the issue of flight in a low-crime area or whether a defendant’s flight from a low-crime area contributes to, or detracts from, the reasonable suspicion analysis. Thus, this issue is res nova before this Court.
In prior cases, we have recognized each of the factors relied upon by Sergeant Brown as relevant in the totality of the circumstances analysis. However, we have never had to determine whether these three specific factors — unprovoked flight, late hour, and' dimly lit area — are sufficient to give an officer reasonable suspicion of criminal activity when the defendant is not in a high-crime area. Although Wardlow and its progeny have found a defendant’s actions are more suspicious in high-crime areas, the concurring/dissenting opinion disagreed. Justice Stevens, writing for the minority, explained that, “because many factors providing innocent motivations for unprovoked flight are concentrated in high crime areas, the character of the neighborhood arguably makes an inference of guilt less appropriate, rather than more so.” Wardlow, 528 U.S. at 139, 120 S.Ct. at 684.
Moreover, the Wardlow majority declared that officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. 528 U.S. at 124, 120 S.Ct. at 676. The majority explained:
In reviewing the propriety of an officer’s conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law | ^enforcement officers where none -exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.
Id. (citing Cortez, 449 U.S. at 418, 101 S.Ct. at 695). We used similar language in State v. Johnson, when we held that officers are allowed to “draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ” 815 So.2d at 811. Although these cases allow officers to make inferences and deductions about an individual’s behavior, neither specifically limits these deductions to an individual’s actions in a high-crime area. Thus, officers should be allowed to make inferences and deductions about an individual’s actions regardless of whether he is in a high-crime or low-crime area.
Applying those principles here, based upon the totality of the circumstances, we conclude that Sergeant Brown did have sufficient justification to conduct' an investigatory stop. When Sergeant Brown first saw the defendant walking toward him at 1:45 a.m. on Groom Road, he did not turn on his emergency blue light, show the defendant his weapon, or even call out to the defendant. According to his uncontradicted testimony, Sergeant Brown continued patrolling and became suspicious of possible criminal activity when the defendant saw the marked police unit and immediately took off running in the opposite direction. Under State v. Alvarez, the defendant’s unprovoked flight was more suspicious than ordinary *411 flight because he was not merely refusing to cooperate or asserting his right to walk away from Sergeant Brown when he turned and ran in the opposite direction for several blocks. 31 So.3d at 1024. According to Alvarez, “allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual’s right to go about his business or to stay put and remain silent in the face 11sof police questioning.” Id. (citing Wardlow, 528 U.S. at 124-25, 120 S.Ct. at 676).
Moreover we have held that flight is inherently suspicious activity, such that it requires much less additional information to justify an officer’s reasonable suspicion. State v. Benjamin, 722 So.2d at 989. Here, Sergeant Brown saw the defendant walking near a residential area at 1:45 a.m. before he noticed the police unit and took flight. The defendant’s presence on a dimly lit street at such a late hour, when most people are in bed, immediately arouses suspicion regarding a potential burglary or theft. Sergeant Brown testified that he had experience with people fleeing when they saw the police coming, that he has arrested such people in the past, and that they were subsequently found with narcotics or weapons. He further testified, “from my experience, when somebody runs at that time of night, especially coming from a poor lit [sic] area, I believe something done happened [sic] or was about to happen.” Thus, Sergeant Brown’s decision to conduct an investigatory stop was based upon the defendant’s unprovoked flight, from a dimly lit area at 1:45 a.m., as well as Sergeant Brown’s experience with individuals who fled from police officers in similar situations. In State v. Johnson, we hot only recognized that trained officers are allowed to make deductions and inferences about a defendant’s behavior, we also gave “due deference” to the officer’s deductions. 815 So.2d at 811 (citing Arvizu, 534 U.S. at 273-74, 122 S.Ct. at 750-51). Consequently, the court of appeal erred in failing- to give any deference to Sergeant Brown’s inferences and deductions regarding the defendant’s unprovoked flight from a residential area at 1:45 a.m.
Under the totality of the circumstances, we conclude Sergeant Brown had reasonable suspicion to justify an investigatory stop of the defendant. He observed the defendant walking in a dimly lit, residential area at 1:45 a.m., when most people are inside or in bed. Sergeant Brown saw the defendant take notice of the marked | upolice vehicle and immediately start running in the opposite direction. In Terry, the Supreme Court held, “in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticular-ized suspicion or ‘hunch,’ but to the specific, reasonable inferences which he is entitled to draw from the facts in light of his experience.” 392 U.S. at 27, 88 S.Ct. at 1883. Based upon his experience, Sergeant Brown reasonably believed the defendant’s behavior indicated that he had just committed a crime or was about to do so. Therefore, we conclude the defendant’s unprovoked flight, coupled with the late hour, dimly lit area,, and Sergeant Brown’s inferences and deductions based upon his experience with individuals who flee from the police, together support a finding of reasonable suspicion.
Thus, the court of appeal erred in granting the defendant’s Motion to Suppress the evidence seized as a result of the investigatory stop. ..For these reasons, we reverse the judgment of the court of appeal and hold that the officer had reasonable suspicion to conduct an investigatory stop.
REVERSED.
JOHNSON, Justice dissents and assigns reasons.

. La. R.S. 40:967(C) provides:
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
(1) Any person who violates this Subsection with respect to pentazocine shall be imprisoned with or without hard labor for not less than two years and for not more than five years and, in addition, may be sentenced to pay a fine of not more than five thousand dollars.
(2) Any person who violates this Subsection as to any other controlled dangerous substance shall be imprisoned with or without hard labor for not more than five years and, in addition, may be sentenced to pay a fine of not more than five thousand dollars.

. La. R.S. 40:1023(C) provides:
It is unlawful for any person to use, or to possess with intent to use, any drug paraphernalia, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Part.

. See United States v. Lawshea, 461 F.3d 857, 859-60 (7th Cir.2006); United States v. Stroman, 500 F.3d 61, 64 (1st Cir.), cert. denied, 552 U.S. 1050, 128 S.Ct. 674, 169 L.Ed.2d 528 (2007); United States v. Caruthers, 458 F.3d 459, 465-66 (6th Cir.2006); United States v. Shambry, 392 F.3d 631, 635 (3rd Cir.2004), cert. denied, 544 U.S. 1006, 125 S.Ct. 1953, 161 L.Ed.2d 785 (2005); Curry v. City of Syracuse, 316 F.3d 324, 335 (2nd Cir. 2003); United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir.), cert. denied, 540 U.S. 860, 124 S.Ct. 166, 157 L.Ed.2d 110 (2003); United States v. Jordan, 232 F.3d 447, 449 (5th Cir.2000).

. See Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983); United States v. See, 574 F.3d 309, 314 (6th Cir.2009); United States v. Bailey, 417 F.3d 873, 877 (8th Cir.), vacated on other grounds, 2005 U.S.App. LEXIS 19891, at *1 (8th Cir. Sept. 15, 2005); United States v. Jones, 432 F.3d 34, 41 (1st Cir.2005); United States v. Brown, 334 F.3d 1161, 1165 (D.C.Cir.2003), cert. denied, 541 U.S. 954, 124 S.Ct. 1702, 158 L.Ed.2d 388 (2004); United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir.), cert. denied, 540 U.S. 860, 124 S.Ct. 166, 157 L.Ed.2d 110 (2003); United States v. Valentine, 232 F.3d 350, 356 (3rd Cir.2000), cert. denied, 532 U.S. 1014, 121 S.Ct. 1748, 149 L.Ed.2d 670 (2001); United States v. Moore, 235 F.3d 700, 704 (1st Cir.2000).

. See Bailey, 417 F.3d at 877; Jones, 432 F.3d at 41; United States v. Roggeman, 279 F.3d 573, 578-79 (8th Cir.), cert. denied, 537 U.S. 879, 123 S.Ct. 79, 154 L.Ed.2d 134 (2002). See also Tanner v. State, 228 S.W.3d 852 (Tex.App.2007).

. See Wardlow, 528 U.S. at 124, 120 S.Ct. at 676; Lawshea, 461 F,3d at 860; Franklin, 323 F.3d at 1301; United States v. Gordon, 231 F.3d 750, 757 (11th Cir.2000), cert. denied, 531 U.S. 1200, 121 S.Ct. 1207, 149 L.Ed.2d 121 (2001).

. La.C.Cr.P. art. 215.1 provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may -demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer *408 reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.

. See Michigan v. Long, 463 U.S. at 1050, 103 S.Ct. at 3481; Alvarez, 31 So.3d at 1024; State v. Cook, 332 So.2d 760, 763 (La.1976); State v. Darby, 550 So.2d 963, 966 (La.App. 5 Cir.1989).

. See State v. Seltzer, 08-34 (La.App. 5 Cir. 5/27/08); 986 So.2d 762, 767; writ denied, 08-1662 (La.4/17/09); 6 So.3d 788; State v. Honeycutt, 08-126 (La.App. 5 Cir. 5/27/08); 987 So.2d 250, 255; State v. Stanfield, Jr., OS-839 (La.App. 5 Cir. 3/14/06); 925 So.2d 710, 717. See also Tanner v. State, 228 S.W.3d 852 (Tex.App.2007).

. See Wardlow, 528 U.S. at 124, 120 S.Ct. at 676; Adams v. Williams, 407 U.S. at 147-48, 92 S.Ct. at 1924; State v. Lewis, 815 So.2d at 821.