JOY COSSICH LOBRANO, Judge.
_JjBy bill of information filed on November 25, 2014, the State of Louisiana (“State”) charged the defendant, Davin King, (“Defendant”) with being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1. Defendant filed a motion to suppress the evidence, which the district court denied on December 15, 20Í4. Defense counsel objected to the ruling.
On February 24, 2015, Defendant withdrew his prior plea of not guilty and entered a plea of guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the district court’s decision denying his motion to suppress the evidence. Defendant waived delays in sentencing and was sentenced to serve ten (10) years at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant timely appeals raising one issue: that the district court erred in deny- *217 mg his motion to suppress the evidence.[1] The State has not filed a responsive brief. For the following reasons, we find no error in the district court’s ruling and we affirm Defendant’s conviction and sentence.
12Since Defendant pled guilty to the charges, the facts of the case are adduced from the evidence and testimony offered at the December 15, 2014 suppression hearing.
New Orleans Police Officer Kevin Penn (“Officer Penn”) testified that he was assigned to the New Orleans Police Department’s (“NOPD”) Eighth District on September 26, 2014. Officer Penn stated that he received a call through dispatch regarding a black male described as wearing a hat, a red, white and blue shirt, tan pants and headphones, reportedly brandishing a handgun on Royal and Bienville Streets. Officer Penn stated that the complainant stayed on the phone with the dispatcher and followed the armed, subject as the subject changed locations, providing updates to the dispatcher as to the subject’s current location. The last location Officer Penn was given was Conti and Bourbon Streets, a location which Officer Penrt described to be crowded with pedestrians. Officer Penn and three other NOPD ofifi-cei’s proceeded to that location and looked for the described subject for ten minutes before spotting an individual, identified by Officer Penn at the hearing as Defendant, who precisely matched the description given by the complainant. Defendant noticed the officers looking at him. At that time, Officer Penn called to Defendant, motioning with his hand to have him approach. In response, however, Defendant became evasive and “kind of backed up a little bit,” moving behind passing pedestrians. As the officers continued their approach, Defendant backed into a corner of a building. The four officers then split up and approached Defendant from both sides but without guns drawn. The officers told Defendant to raise his hands but Defendant instead proceeded to put his hand into his pocket. The officers, concerned he may be reaching for a weapon, got close enough to him to grab control of his arms when they heard. ^something drop to the ground.[2] After cuffing Defendant, the officers found a semiautomatic handgun on the ground and arrested him.[3] When they asked him for identifying information, Defendant gave them a name subsequently determined to be an alias. Officer Penn testified that he later learned that there was an outstanding attachment for Defendant’s arrest.

ERRORS PATENT

A review of the record shows one error patent, namely that the trial court granted Defendant’s motion for appeal pri- or= to imposition of the original sentence. The motion for appeal was granted prematurely. Although a defendant can take an appeal only from a conviction and sentence, this court has held that an appeal taken prior to sentencing will not be dismissed “because ‘[dismissing the appeal would simply result in a delay of the appellate process and hinder defendant’s right to appeal.’ ” State v. Thompson, 98-0988, p. 8 (La.App. 4 Cir. 1/26/00), 752 So.2d 293, 295 (quoting State v. Warren, 538 So.2d 1036, 1037 (La.App. 4 Cir.1989); State v. *218 Martin, 483 So.2d 1223, 1225 (La.App. 4 Cir.1986)). Thus, the error is harmless.

ASSIGNMENT OF ERROR

By his sole assignment of error, Defendant contends that the trial court erred by denying his motion to suppress the evidence, i.e., the semi-automatic handgun.
■At the conclusion of the testimony at the suppression hearing, defense counsel argued that the evidence should have been suppressed because the | ¿anonymous tip concerning the suspect contained only a description of the suspect, and it did not contain “predictive” information about the suspect citing, Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).[4] In response, the State argued that Defendant matched the- exact description provided to the NOPD dispatcher and was-found in the location given to the dispatcher. The State asserted that,-the police had reasonable suspicion to stop Defendant particularly since Defendant did not comply with the police instruction to raise his hands. Instead of complying with the instruction to raise his hands, Defendant positioned his hands near his waistband, and, when the police grabbed his arms, the firearm fell from his waistband in plain view. The district court found probable cause and denied Defendant’s motion to suppress the evidence.
An appellate court should afford great deference to a trial court’s findings of fact based on the weight of the testimony and the credibility of the witnesses, and a reviewing court may not. overturn those findings unless there is no evidence to support those findings. State v. Thompson, 2011-0915, p. 13-14 (La.5/8/12), 93 So.3d 553, 563. “Legal findings or conclusions of the -trial court are reviewed de novo.” Id. Since the officers seized the gun without a warrant, the state had the burden of showing any evidence seized in the absence of a warrant was lawfully seized. See La.C.Cr.P. art. 703 D; State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581.
Defendant contends that law enforcement had. no reasonable suspicion to stop him. Pursuant to La.C.Cr.P. art. 215.1, an officer may stop a person and |^question him if the officer has.a reasonable suspicion that the person is committing, has committed or is about to commit an offense. See State v. Temple, 2002-1895, p. 4 (La.9/9/03), 854 So.2d 856, 859. Reasonable suspicion is less than the probable cause needed to arrest a defendant; an officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); Temple, 2002-1895 at p. 4, 854 So.2d at 859-860. In State v. Robertson, 2013-1403, p. 7 (La.App. 4 Cir. 4/9/14), 136 So.3d 1010, 1014, this Court explained reasonable suspicion as follows:
As this Court reiterated in State v. Williams, [20]07-0700, p. 11 (La.App. 4 car. 2/13/08), 977 So.2d 1101, 1111 (internal citations omitted), “ ‘reasonable suspicion’ to stop is something less than probable cause for an arrest; a reviewing court must look to thé facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights.” See also State v. Harris, *219 [20]11-0941, p. 8 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 911. “In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion- of privacy it entails” and consider the totality of the circumstances “in determining whether reasonable suspicion exists.” Williams, [20]07-0700, p. 11, 977 So.2d at 1111. An “officer’s past' experience, training and common sense may be considered in determining if his inferences from the facts at hand were, reasonable,” and “[d]eference should be given to the experience of the officers .-.. present at the time of the incident.” Id., [20]07-0700, pp. 11-12, 977 So.2d at 1111.
As noted by the Louisiana Supreme, Court in State v. Morgan, 2009-2352, p. 4 (La.3/15/11), 59 So.3d 403, 406: “Although reasonable suspicion is a less demanding standard than probable.cause, the Fourth Amendment requires some minimal level of objective justification for making the stop. [United States v.] Sokolow, 490 U.S. [1] at 7, 109 S.Ct. [1581] at 1585 [104 L.Ed.2d 1 (1989) ].” J^Under Morgan, factors to be considered include the time of day and location of the stop, as well as the defendant’s actions prior to the stop. Id.
Defendant asserts that the police lacked reasonable suspicion to stop him solely on the basis of a matching location and physical description provided by an anonymous caller, without some corroborating evidence of criminal behavior. Defendant cites Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) in support of his contention.
In J. L., an anonymous tipster contacted law enforcement with information that “a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.” 529 U.S. at 268, 120 S.Ct. at 1377. Two responding police officers arrived at the bus stop and saw three black males. One of the three men, J.L., was wearing a plaid shirt. The officers did not see J.L. carrying a weapon nor did they see him making any threatening or unusual movements. One of the officers, however, stopped J:L., frisked him and recovered a weapon. The other two men were also frisked but no weapons were found. J.L. was charged with carrying a concealed firearm without a license and gun possession under the age of 18. The Supreme Court of Florida found the search was invalid under the Fourth Amendment and the United States Supreme Court agreed.
The J.L. Court noted that the police officer’s suspicion that J.L. was engaged in criminal activity arose from an anonymous call made from an unknown location and not from the officers’ independent observations of suspicious behavior of the suspect. Noting that the tip in J.L. lacked any “moderate indicia of reliability,”, the Court stated: .
The anonymous call concerning J.L. provided no predictive information • and therefore left the police without meahs to test the informant’s knowledge or ^Incredibility ... All the police had to go on in this cáse was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information.
The J.L. Court stated: “Knowledge about a person’s future movements' indicates some familiarity with that person’s affairs ...” 529 U.S. at 271, 120 S.Ct. at 1379. Because there was no predictive information as to the suspect’s movements, the anonymous tip alone, without any observation of any criminal activity by the officers themselves, did not give them reasonable suspicion to stop the defendant. Id.
*220 Defendant contends that absent predictive information which corroborates the criminal behavior on the part of a defendant by the police, an anonymous tip alone does not justify an intrusion on a person’s freedom and privacy. However, the J.L, Court itself recognized that there may be other ways of corroborating the reliability of a tip. [“Apart from the tip, the officers had no reason to suspect any of the three [suspects] of illegal conduct. The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements.” 529 U.S. at 268, 120 S.Ct. at 1377 (emphasis added.) ][5] Quoting Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the J.L. Court reiterated that law enforcement are always allowed to stop and even frisk an individual “ ‘[w]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous 529 U.S. at 269-70, 120 S.Ct. at 1378; 8see also, State v. Johnson, 94-1170, p. 5 (La.App. 4 Cir. 8/23/1995), 660 So.2d 942, 947 (Officers can consider whether the person appeared nervous or startled or attempted to flee at the sight of police officers when determining whether they have reasonable cause to make an investigatory stop).
In the case sub judice, the anonymous tip may have placed law enforcement on the scene armed with a description of an individual thought to be brandishing a firearm but it was Defendant’s own behavior in response to law enforcement’s approach that corroborated that criminal activity may be occurring. Officer Penn testified that Defendant became evasive when he noticed the officers looking at him, that he backed up and moved behind passing pedestrians as the officers approached him, elusively backing into a corner. Instead of following the officers’ orders to put his hands up, Defendant put his hand in his pocket, a gesture which the officers, in their experience, viewed to be threatening and which raised concerns that Defendant may produce a weapon. Thus, Defendant’s own conduct, personally observed by the officers who were investigating the anonymous tip, distinguishes this case from the “bare-boned” tip about a suspect with a gun which led police to unlawfully frisk and seize a weapon from the defendant in the J.L. case.
Defendant’s case is factually similar to another case previously decided by this Court. In State v. Jones, 02-1168 (La.App. 4th Cir.1/29/03), 839 So.2d 377, this Court considered the question of whether, based on an anonymous tip, there was reasonable suspicion to conduct an investigatory stop which resulted in the search and seizure of a weapon. In Jones, a law enforcement officer responded to a dispatch call of a black male wearing a yellow shirt and blue shorts reported to be lain possession of a gun in the 3000 block of Mandeville Street. Jones, 02-1168, at pp. 1-2, 839 So.2d at 377-78. When the officer arrived on the scene, he saw several people on the left side of the street and observed Defendant standing there in a yellow shirt and blue shorts. As the officer exited his vehicle and approached the man, the man began to walk away while looking around in a nervous and confused manner. When asked to stop by the officer, the subject instead walked away faster. Id. at p. 2, 839 So.2d at 378. Upon catching up to the man, the officer asked *221 him to place his hands on a wall so that a pat down for weapons could be conducted for the officer’s safety. During the search, a loaded automatic handgun was found and seized from Defendant’s waistband of his pants. Defendant was then advised of his rights, arrested and subsequently charged with being a felon in possession of a firearm. Id.
The defendant in Jones argued that the anonymous tip did not give the officer reasonable suspicion to stop him, citing Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254. Id. at p. 4, 839 So.2d at 379. The Jones Court first noted that police are not powerless to act on a non-predictive, anonymous tip they receive, and, if during the course of the officer’s subsequent surveillance of a defendant, they observed suspicious or unusual behavior, they would then have reasonable suspicion to detain him. Jones, 02-1168, at p. 5, 839 So.2d at 379-380 [citing State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268.] The Jones Court also referenced the “totality of the circumstances” test set forth by the Louisiana Supreme Court in State v. Belton, 441 So.2d 1195 (La.1983) and considered that “although flight, nervousness, or a startled look at the sight of a police officer is, by itself insufficient to justify an investigatory stop ... this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of | ^reasonable cause.” Id. at p. 6, 839 So.2d at 380. The Jones Court thus concluded that the anonymous tip received by law enforcement coupled with the defendant’s actions upon seeing the police officer provided reasonable suspicion to stop the defendant. The district court’s denial of the motion to suppress was thus affirmed. Id.
Finding the J.L. case cited by Defendant to be distinguishable and applying the rationale set forth in Jones and the jurisprudence cited therein, we find after considering the “totality of circumstances,” that there was reasonable suspicion for the officers to stop Defendant. The facts developed at the motion to suppress and taken from the arrest report showed that law enforcement had an anonymous tip which accurately described Defendant by his clothing and headphones, as well as his location and that Defendant was alleged to be brandishing a weapon on a busy Friday at 2:40 a.m. on Bourbon Street, while the street was filled with a great deal of pedestrian traffic. Coupled with the officers’ own observations of Defendant’s evasive, suspicious, and possibly threatening behavior which began when the ■ officers appeared nearby, the anonymous tip was sufficient to establish reasonable suspicion for law enforcement to conduct an investigatory stop of Defendant to determine whether he was carrying a dangerous weapon. Jones at p. 6, 839 So.2d at 380. By the same token, law enforcement would have been justified to conduct a frisk of Defendant’s outer clothing surfaces based on safety concerns, although one was not necessary here. See Terry v. Ohio, 392 U.S. at 24, 88 S.Ct. at 1881 (“When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact h dairying a weapon and to neutralize the threat of physical harm.”) When the officers grabbed control of Defendant’s arms as he was reaching into his pants’ pocket, Defendant’s gun fell to the ground. At that point, the officers had probable cause to arrest him for carrying a concealed weapon. Accordingly, the district court did not err in denying Defendant’s motion to suppress the evidence. *222 Defendants conviction and- sentence are, therefore, affirmed.

. Defendant seeks specifically to suppress the evidence seized from him at his arrest, a semi-automatic handgun.

, Officer Penn said that he drew his weapon when the defendant reached his hand into his pocket.

.The arrest record shows that Defendant was arrested at 2:40 a.m. on Friday, September 26, 2014. Law enforcement confiscated a .380 caliber semi-automatic handgun with a live round bullet.

. In J.L., the United States Supreme Court found that an informant's tip could .be deemed reliable if, for example, it was accompanied by a "correct forecast of a subject’s ‘not easily predicted’ movements.” J.L., 529 U.S. at 269, 120 S.Ct. at 1378, quoting Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).

. In his concurrence in J.L., Justice Kennedy also noted that "[T]here are many indicia of reliability respecting anonymous tips that we have yet to explore in our cases.” 529 U.S. at 274, 120 S.Ct. at 1380-81.