Judge PAUL A. BONIN.
 

 LThe defendant, Kevin Robinson (“Mr.Robinson”), appeals his conviction and sentence for manslaughter, a violation of La. R.S. 14:31. The trial court imposed a sentence of 25 years at hard labor. For the reasons that follow, we affirm his conviction and sentence.
 

 TRIAL COURT PROCEEDINGS
 

 On February 8, 2007, the Orleans Parish grand jury indicted Mr. Robinson for the second-degree murder of Dale Murphy, Jr. (“Mr.Murphy”) and the illegal carrying of a weapon while in possession of a controlled dangerous substance.
 
 See
 
 La. R.S. 14:30.1 and 14:95(E). On February 15, 2007, Mr. Robinson was arraigned with counsel present and pled not guilty to both charges against him. On August 14, 2007, the trial court granted the State’s motion to sever the illegal-carrying-of-a-weapon count from the second-degree-murder count.
 

 The jury trial, at which the defendant was represented by counsel, began and concluded on November 7, 2007. A twelve-person jury found the defendant guilty of the responsive verdict of manslaughter on November 7, 2007.
 

 The record indicates that the trial court ordered, and received, a pre-sentence investigation concerning the defendant. Further, prior to sentencing, Mr. Murphy’s | ¡¡father gave a victim impact statement on the record. On January 18, 2008, the trial court sentenced the defendant to serve twenty-five years at hard labor. The trial court further noted that this was a crime of violence and that this sentence was to run concurrently with the defendant’s five-year sentence for the violation of La. R.S. 14:95(E).
 

 DEFENDANT’S ASSIGNMENT OF ERROR
 

 Mr. Robinson’s appellate counsel assigned one error, insufficiency of the evidence upon which to sustain the conviction.
 

 FACTS AT TRIAL
 

 On November 7, 2007, Lesean Hodges (“Ms.Hodges”), the girlfriend of the deceased victim Mr. Murphy, testified first in the State’s case in chief. Ms. Hodges testified that on November, 7, 2006, she, Mr. Murphy, and their son were driving down Alvar Street, approaching the intersection with Villere Street, when Mr. Murphy noticed a group of boys and men he knew at the corner. Mr. Murphy stopped his car in the middle of the block and left to speak to the group, leaving Ms. Hodges
 
 *522
 
 and the baby inside the vehicle. Ms. Hodges testified that Mr. Murphy was out of the car talking to the group for some time when she eventually got out of the car to see what was taking so long.
 

 As Ms. Hodges walked down the street toward the group, she thought she saw Mr. Murphy roughhousing with one of the men. As she got closer, Ms. Hodges could see that Mr. Murphy and the other person were in fact fighting. When she drew near to Mr. Murphy she asked him to stop fighting and leave with her. However, Mr. Murphy replied “Man, he just snuffed me,” and he continued fighting.
 

 | sAbout that time, the mother of the man who was fighting with Mr. Murphy came out of a nearby house and yelled “Dale [Mr. Murphy], don’t fight him, that’s a little boy, you’re going to go to jail.” Immediately thereafter, Ms. Hodges noted, another man came out of the same house holding a gun. According to Ms. Hodges’ testimony, the mother of the boy fighting with Mr. Murphy attempted to pull the gun away from the other man, but to no avail. Ms. Hodges testified that she witnessed the man point the gun and shoot several rounds at Mr. Murphy. Ms. Hodges stated that Mr. Murphy then fell to the ground as she ran away from the scene toward their vehicle.
 

 Ms. Hodges drove to another house on the other side of St. Claude Avenue where she deposited her baby with a caretaker. Ms. Hodges then returned to the crime scene with several friends and found that Mr. Murphy had died and that his body had been moved. At the crime scene Ms. Hodges spoke to Detective Decynda Barnes (“Detective Barnes”) of the New Orleans Police Department (“N.O.P.D.”). Ms. Hodges remained in New Orleans for Mr. Murphy’s funeral, then returned to Houston, Texas, shortly after Thanksgiving. After returning to Houston, she again spoke to Detective Barnes, gave a tape recorded statement, and identified the defendant in a photographic lineup.
 

 At trial Ms. Hodges identified the defendant as the man who shot and killed Mr. Murphy. Ms. Hodges noted that although she had seen the defendant in the neighborhood prior to the day of the shooting, she had never spoken with him. Likewise, Ms. Hodges also noted that she was familiar with the mother of both the boy fighting with Mr. Murphy and the defendant but that she had never spoken with her.
 

 |4On cross-examination, Ms. Hodges testified that she spoke to a National Guardsman at the crime scene, but could not recall the substance of their conversation. Additionally, Ms. Hodges disclosed that she initially described Mr. Murphy’s killer as being of a dark complexion, with a big nose, a big lip, a low haircut and approximately 5'2" to 5'3" tall. However, at trial Ms. Hodges acknowledged that the defendant did not have a dark complexion.
 

 The State next elicited testimony from N.O.P.D. Detective Michael McCleary (“Detective McCleary”) who testified that on November 7, 2006, he was assigned to the N.O.P.D.’s homicide division and investigated a shooting in the 1500 block of Alvar Street. Detective McCleary noted that other detectives were also on the scene and conducted a canvas of the surrounding areas to locate witnesses. Aside from Ms. Hodges, no one else professed to have witnessed the shooting. Furthermore, Detective McCleary testified that Detective Barnes worked with him on this case. Detective McCleary stated that Detective Barnes interviewed Ms. Hodges, who stated that the defendant killed her boyfriend, and presented her with a photographic lineup from which Ms. Hodges identified the defendant as the shooter. Additionally, Detective McCleary testified that no other individuals were identified as
 
 *523
 
 having shot Mr. Murphy. Based upon the identification of the defendant, as well as the other evidence collected, Detective McCleary obtained an arrest warrant for the defendant. The defendant was arrested on November 16, 2006. Finally, Detective McCleary identified the arrest warrant as well as several photographs of the crime scene.
 

 The State called Detective Barnes to testify in its case against the defendant. Detective Barnes testified that as a result of her interviews she learned the defendant’s name. After learning his name, Detective Barnes prepared a sixjjoerson5 photographic lineup and presented it to Ms. Hodges at an out of state location. Detective Barnes testified that Ms. Hodges identified the defendant as Mr. Murphy’s shooter. Further, Detective Barnes also noted that she took a formal taped statement from Ms. Hodges at the time of the photographic lineup. After returning to New Orleans, Detective Barnes prepared a warrant for the defendant’s arrest.
 

 Detective Barnes testified that she was at the station on the day the defendant was arrested. Further, Detective Barnes stated that the defendant gave a verbal statement at the time of his arrest. At trial, Detective Barnes identified the waiver of rights form signed by the defendant on the day of his arrest. After being advised of his rights and signing the waiver, the defendant denied any involvement in Mr. Murphy’s killing and stated that he was with his girlfriend at her house at the time of the shooting. Detective Barnes noted that the defendant identified his girlfriend solely by her first name, but conceded that she did not specifically ask the defendant to provide his girlfriend’s last name. Further, Detective Barnes stated that in spite of her efforts she was never able to locate the defendant’s girlfriend or her house.
 

 After closing arguments and jury instructions, the jury began its deliberations. After deliberating, the jury found the defendant guilty of manslaughter.
 

 DISCUSSION
 

 Review for Errors Patent
 

 We have independently reviewed the record for errors patent. La.C.Cr.P. art. 920(2). From our inspection of the pleadings and proceedings, we have discovered no error.
 

 |
 
 ⅛Appellant’s Argument
 

 Appellate counsel argues that the evidence used to convict Mr. Robinson was insufficient to support a conviction because it contained contradictions, omissions and hearsay. Appellate counsel further contends that “the responsive verdict of manslaughter was a compromise by a jury too thoroughly confused to make up their minds,” inferring that the jury had reasonable doubt about the guilt of Mr. Robinson on the charge of second-degree murder.
 

 Insufficiency of Evidence
 

 For thirty years the United States Supreme Court’s decision in
 
 Jackson v. Virginia
 
 has stood for the proposition (articulated by our Supreme Court in
 
 State v.
 
 Captville) that in order to establish that evidence was sufficient to convict a defendant of a crime, a reviewing court must “determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Captville,
 
 448 So.2d 676, 678 (1984). “A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.”
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.
 
 *524
 
 1992). Great deference is given to the jury, who has an opportunity to observe the witnesses’ demeanor and judge the credibility of the testimony. Absent manifest error, a reviewing court will follow the precedent established by
 
 Jackson.
 

 In the instant case, appellate counsel argues that the testimony of the State’s eyewitness to the crime, Ms. Hodges, was contradictory in several respects: (1) Ms. Hodges told a National Guardsman, whom neither the State nor the defense called as a witness, that “she heard shots first and then ran to the corner after the 17fact”; (2) Ms. Hodges testified that she “kept a cool head and rushed away [from the scene] to protect her baby” while Officer Barbe testified that Ms. Hodges was hysterical and could not be interviewed on the date of the shooting; (3) Ms. Hodges told relatives “They shot him [Mr. Murphy],” but failed to mention the name of the shooter though she acknowledged recognizing him from the neighborhood; and (4) Ms. Hodge’s description of the shooter to Detective Barnes was of a 5'2" to 5'3" dark-skinned man, while Mr. Robinson is 5'10" and light-skinned.
 

 With respect to the first discrepancy, it is meritless. Neither the defense counsel nor the State produced the National Guardsman at trial. Thus there is no testimony from this National Guardsman in the record that Ms. Hodges was not an eyewitness to the shooting of Mr. Murphy.
 

 Additionally, appellate counsel argues about the proper characterization of Ms. Hodges’ emotional state at the scene of her boyfriend’s murder- — -specifically, whether she was calm or hysterical. Clearly, the jury had an opportunity to observe the testimony of Ms. Hodges at trial when she was called as a witness by both the State and the defense. Utilizing the
 
 Jackson
 
 standard and viewing the evidence in its entirety in the light most favorable to the prosecution, we find it plausible that a rational trier of fact could have concluded, after considering the totality of the evidence, that after witnessing the murder of her boyfriend and father of her children Ms. Hodges’ emotional state did not impede her ability to witness the crime and identify the assailant.
 

 Finally, appellate counsel raises the discrepancies in Ms. Hodges’ testimony: (1) recognizing Mr. Robinson from the neighborhood, yet not naming him as the shooter when she reported the crime to relatives immediately following the shooting and (2) characterizing the 5'10" defendant as a dark-skinned man 7 to 8 | finches shorter than his actual height. We are bound by the Jackson standard that views the evidence in the light most favorable to the prosecution to determine whether a reasonable trier of fact could determine that each element of the crime was proven.
 
 See Jackson,
 
 443 U.S. at 319, 99 S.Ct. 2781.
 

 After reviewing all evidence under the Jackson standard, it is clear that a reasonable trier of fact could have determined that the prosecution proved the elements of manslaughter, and could have believed the explanations proffered by the State’s eyewitness to the killing. First, the trauma of witnessing the murder of her boyfriend led Ms. Hodges to simultaneously omit announcing the shooter’s name at the time she revealed Mr. Murphy’s death, particularly when she was not personally affiliated with the defendant, but only recognized him from the neighborhood. Second, the jury could have accepted the contention that skin can darken with sun exposure. The jury found that these explanations were credible and precluded reasonable doubt that
 
 *525
 
 the defendant committed manslaughter.
 
 [1]
 

 Circumstantial Evidence
 

 Appellate counsel argues that the State failed to use scientific evidence to tie Mr. Robinson to the crime instead relying on circumstantial evidence. However, Ms. Hodges’ testimony that she saw Mr. Robinson shoot and kill Mr. Murphy is direct, not circumstantial evidence. The failure of the State to produce the murder 19weapon at trial does not negate Ms. Hodges’ identification of Mr. Robinson as the shooter or somehow place it in the category of an inference that the trier of fact had to make in order to link Mr. Robinson to the alleged crime.
 

 However, even assuming
 
 arguendo
 
 that Ms. Hodge’s identification of Mr. Robinson was deemed circumstantial, such circumstantial evidence is recognized as valid under Louisiana law. According to the Supreme Court in
 
 State v. Feraci:
 

 Although La. R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded, this statutory rule is not a separate test form the Jackson standard, supra and does not establish a stricter standard of review in circumstantial evidence cases. Rather, all the evidence, both direct and circumstantial, must be sufficient under the Jackson, standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.
 

 499 So.2d 1218, 1219 (1987).
 

 Thus, it is still the
 
 Jackson
 
 test that sets the standard for the reviewing court to determine whether there was insufficient circumstantial and direct evidence to affirm a conviction.
 

 In the instant case, counsel raised at least two hypotheses of innocence, but that the jury received no evidence to prove either. The first was the unidentified National Guardsman who, had he been subpoenaed or appeared, might have testified that Ms. Hodges did not witness the shooting. The record has no testimony to contradict Ms. Hodges’ identification. The second hypothesis of innocence was the alibi Mr. Robinson gave to the police when he was arrested. Although defense counsel questioned Detective Barnes insistently whether she obtained the last name of Mr. Robinson’s girlfriend, defense counsel offered no evidence to support the alibi during trial.
 

 11 ((Therefore, this court is satisfied that even assuming somehow that the State’s evidence could be viewed as circumstantial, which it clearly was not,
 
 “any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Jackson,
 
 443 U.S. at 319, 99 S.Ct. 2781.
 

 
 *526
 

 Responsive Verdict of Manslaughter
 

 Under La. C. Cr. P. art. 814(A)(3), “guilty of manslaughter” is a responsive verdict that may be rendered when a defendant has been indicted for second-degree murder. Contrary to appellate counsel’s assertion that this responsive verdict was “a compromise by a jury too thoroughly confused to make up their minds,” the record appears to support the jury’s verdict. We conclude that there was sufficient evidence for the trier of fact to find that the elements of manslaughter arising from the killing of Mr. Murphy by Mr. Robinson were proved by the State beyond a reasonable doubt.
 

 DECREE
 

 For the foregoing reasons, we affirm the conviction and sentence of 25 years at hard labor of Kevin Robinson for the manslaughter of Dale Murphy, Jr.
 

 AFFIRMED.
 

 [1]
 

 . Under La. R.S. 14:31(A) (2009), manslaughter is defined as:
 

 (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
 

 (2) A homicide committed, without any intent to cause death or great bodily harm.
 

 (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
 

 (b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.