DANIEL L. DYSART, Judge.
| iDefendant, Walter J. Robertson, appeals his conviction of possession with the intent to distribute marijuana on the basis that the trial court erred in denying his motion to suppress the evidence. For the reasons that follow, we affirm the conviction and sentence.
PROCEDURAL BACKGROUND
On July 13, 2013, the defendant was charged by bill of information with possession with the intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1), to which the defendant pled not guilty. The defendant moved to suppress the evidence and his statement. After a hearing on the motions, the trial court denied the motion to suppress the statement, but finding no probable cause, granted the motion to suppress the evidence. The State then filed an application for a supervisory writ which was granted. In State v. Robertson, un-pub., 3-0646 (La.App. 4 Cir. 5/23/13), this Court reversed the trial court’s determination that probable cause did not exist for the officers’ search of the defendant and therefore found error in the trial court’s suppression of the evidence. The defendant did not seek review of this ruling with the Supreme Court.
| ¡¡After the defendant waived his right to a jury trial, he proceeded to trial before a judge on June 21, 2013 and was found guilty of the charged offense. The defendant then waived all delays and the trial court sentenced him to five years at hard labor with credit for time served. The sentence was suspended and the defendant was placed on active probation on the condition that he pay certain sums.[1] This appeal followed.
FACTUAL BACKGROUND
The sole witness to testify at the hearing on the motions to suppress and at trial was New Orleans Police Officer Jamal Kendrick. At the hearing on the motions to suppress, Officer Kendrick testified that on June 26, 2012, he was patrolling the Wind Run Apartments (an area known for high crime) when he observed a man (later identified as the defendant) walking through the driveway. When the defendant saw Officer Kendrick’s marked police car, he “abruptly changed directions and went to walk quickly away.” When Officer Kendrick approached the defendant, he noticed a bulge in his right rear pocket and he detected a “strong odor of marijuana,” something which he was able to identify because he “deal[s] with it every day.” He then conducted a pat-down and found six small bags of marijuana in the defendant’s right rear pocket, as well as a small plastic bag of marijuana in his right front pocket and $74.00 in cash. He advised the defendant of his Miranda rights. The defendant was brought to the police station where he advised another officer that he “sells his bags for ten dollars.”
IsOfficer Kendrick’s trial testimony was largely the same as that given at the hearing on the motions to suppress — that he was driving through the apartments and observed the defendant, who “all of a sudden observed a marked police unit ... and abruptly changed direction and began to walk away fast.” Officer Kendrick then conducted a “suspicious person” stop of the defendant at which time he smelled the *1012 marijuana, conducted a pat-down, and discovered the bags of marijuana. Officer Kendrick testified that he conducted the pat-down because he believed the defendant was “concealing the contraband” and because of his concern for his safety, given that the area was noted for its “high crime.” After his arrest and transport to the police station, the defendant admitted that he sold marijuana.
DISCUSSION[2]
The sole issue presented by this appeal is whether Officer Kendrick had reasonable suspicion to stop the defendant, after which he smelled the odor of marijuana emanating from the defendant. The defendant maintains that his “[walking] in a different direction upon seeing an approaching officer” is insufficient “to give rise to a reasonable suspicion to conduct an investigatory stop.” He next argues that “the district court never indicated that [it] found the officer’s claim [that he smelled marijuana on the defendant] to be credible” and that this court should remand the matter to the trial court for a “credibility” assessment.
At the outset, we note that this Court has already ruled on the issue of the search of the defendant and the seizure of the bags of marijuana and found that, |4based upon Officer Kendrick’s testimony “that he detected a strong odor of marijuana emanating from the defendant’s person and his observation of a bulge in the defendant’s pocket, the officer had probable cause to search the defendant....”
As this Court noted in State v. Golden, 11-0735, p. 13 (La.App. 4 Cir. 5/23/12), 95 So.3d 522, 531, writs denied, 12-1393 (La.1/11/13), 106 So.3d 545, 12-1417 (La.1/11/13), 106 So.3d 547, citing State v. Gillet, 99-2474, p. 5 (La.App. 4 Cir. 5/10/00), 763 So.2d 725, 728:
Under the law-of-the-case doctrine, an appellate court will not reverse its pretrial determinations unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result. Courts of appeal generally refuse to reconsider their own rulings of law on a subsequent appeal in the same case.
Thus, where an appeal consists of the same arguments previously raised in a writ application and a defendant does not present any new evidence bearing on the correctness of the court’s prior decisions, this court should decline to reconsider its prior rulings under the law of the case doctrine. See State v. Duncan, 11-0563, p. 26 (La.App. 4 Cir. 5/2/12), 91 So.3d 504, 520. See also Golden, 11-0735, p. 14, 95 So.3d at 531 (“defendant has [not] established that this court’s prior, considered writ decision on the merits was patently erroneous and produced an unjust result.”). In the instant matter, the defendant does not point to any new evidence for which a reconsideration of this Court’s prior ruling is warranted. Nor do we find that ruling to have been patently erroneous or to have produced an unjust result. We therefore decline to revisit the issue in this appeal.
We will, however, address the issue of whether the initial stop of the defendant was legal pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) |sand its progeny. The issue of the search and seizure of the defendant was addressed by this Court in the State’s writ application and a review of the record also indicates that the issue of the initial stop was previously raised. In the hearing on the motions to suppress, counsel for the defendant clearly raised the issue when she argued that Officer Kendrick’s observ- *1013 mg the defendant “from 40 feet away walk and then turn and walk in a different direction ... is not sufficient to create an articulable suspicion.” She again raised the issue at trial by arguing that “this officer had no reason to approach [the defendant]” and stating that “[i]t is an illegal stop.” Similarly, when the State filed its writ application, it addressed the initial stop as well; its writ application stated:
In the case at bar, the court did not find that the initial stop of the defendant was [sic] been illegal. The defendant’s pronounced action in looking up and noticing the marked police car, then abruptly changing direction is consistent with actions that would justify a reasonable police office[r] in believing that the defendant has committed or is about to commit a crime. See State v. Alvarez, 31 So.3d 1022, 1024 (La.2010) (when a first tier interaction is initiated, without more provocation, headlong flight is not simply “a mere refusal to cooperate.”) (quoting Illinois v. Wardlow, 528 U.S. 119, 124-125 [120 S.Ct. 673, 145 L.Ed.2d 570] (2000)). While it is possible that the defendant’s actions were innocent, probable cause will not be defeated simply because innocent explanations for an activity can be imagined. State v. Green, 2002-1022 (La.12/4/02), 831 So.2d 962, 969-70 (citing LaFave, Search and Seizure, § 3.2(e), p. 69). (Emphasis supplied).
Finally, while this Court’s disposition of the State’s writ was issued before counsel for the defendant was able to file an opposition, defense counsel filed a Petition for Rehearing on State’s Petition for Supervisory Writs. In that Petition, the defendant specifically addressed the argument that that the defendant’s initial stop was unlawful. In a section titled “The Officer Lacked Reasonable Suspicion |fito Support a Terry Stop,” the defendant, citing Terry, recognized that “officers may briefly stop an individual only if they have ‘reasonable suspicion’ that criminal activity may have occurred, is occurring, or is about to occur.” He then argued that there was no “reasonable articulable suspicion for even a brief stop of a citizen under Terry.... ” It does not appear though that the trial court expressly addressed the issue of the initial stop, and this Court’s writ disposition only addressed whether the odor of marijuana gave Officer Kendrick probable cause for searching the defendant.[3] Arguably, both the trial court and this Court considered, but rejected, the defendant’s contention that the initial stop was illegal (indeed, probable cause for the defendant’s search necessarily depends on the propriety of the initial stop). However, because the record is unclear as to whether this issue was fully developed or addressed, we now consider it.
Under our well-settled jurisprudence, a police officer is allowed to conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Under Terry, and “as codified in Article 215. 1, police officers may stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand *1014 that the person identify himself and explain his actions.” State v. Chaplain, 12-1012, p. 4 (La.App. 4 Cir. 5/29/18), 114 So.3d 1274, 1277.[4] Indeed, “ ‘law enforcement |7officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen..." State v. Lewis, 00-3136, p. 3 (La.4/26/02), 815 So.2d 818, 820, quoting Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)(White, J., plurality opinion).
The threshold inquiry under Article 215.1 is the reasonableness of the officer’s suspicion that a person has committed, will commit or is committing an offense. As this Court reiterated in State v. Williams, 07-0700, p. 11 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1111 (internal citations omitted), “ ‘reasonable suspicion’ to stop is something less than probable cause for an arrest; a reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights.” See also State v. Harris, 11-0941, p. 8 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 911. “In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails” and consider the totality of the circumstances “in determining whether reasonable suspicion exists.” Williams, 07-0700, p. 11, 977 So.2d at 1111. An “officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable,” and “[djeferenee should be given to the experience of the officers ... present at the time of the incident.” Id., 07-0700, pp. 11-12, 977 So.2d at 1111.
|/The Louisiana Supreme Court has indicated that while “flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop,” “this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause.” State v. Morgan, 09-2352, p. 8 (La.3/15/11), 59 So.3d 403, 408. More importantly, the Court noted that “flight from police officers is the most important factor in the totality of the circumstances analysis.” Id.
The Morgan case provides telling guidance as to what actions of a defendant give rise to a reasonable suspicion of criminal activity. In that case, the Supreme Court considered the legality of a stop of an individual in a low-crime area at 1:45 in the morning. The testimony at trial was simply that the defendant was walking towards the officer in a dimly lit area. Upon seeing the marked police car, the defendant immediately turned and ran in the opposite direction.
The Morgan Court first noted that, under Terry, “a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.” Id., 09-2352, p. 4, 59 So.3d at 406 (citation omitted). It then noted that, while “an individual’s presence in a ‘high-crime area,’ alone, is insufficient to support a reasonable suspicion of criminal activity, ... a location’s characteristics are relevant in determining whether the *1015 circumstances are sufficiently suspicious to warrant further investigation.” Id., 09-2352, p. 6, 59 So.3d at 406. The Court cited Illinois v. Wardlow, for the principle that “unprovoked flight by an individual in a high-crime area is sufficient to give police officers reasonable suspicion of criminal activity.” Id., 09-2352, p. 6, 59 So.3d at 407, citing Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (internal citations omitted). The Court reasoned:
Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.... Flight, by its very nature, is not “going about one’s business”; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual’s right to go about his business or to stay put and remain silent in the face of police questioning.
Id., quoting Wardlow, 528 U.S. at 124-125, 120 S.Ct. at 676.
The Court also noted that, “ ‘[g]iven the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.’” Id., 09-2352, p. 9, 59 So.3d at 409, quoting State v. Benjamin, 97-3065 (La.12/1/98); 722 So.2d 988, 989. The Court then concluded that the totality of the circumstances gave the officer “reasonable suspicion to justify an investigatory stop of the defendant.” Id., 09-2352, p. 13, 59 So.3d at 411. Although the area in which the defendant was stopped was a low-crime area, his walking in a dimly lit area at 1:45 a.m., coupled with his immediate flight in the opposition direction, justified the officer’s reliance on his “inferences and deductions based upon his experience with individuals who flee from the police” to “support a finding of reasonable suspicion.” Id., 09-2352, p. 14, 59 So.3d at 411.
In the instant matter, Officer Kendrick testified that, when the defendant noticed his marked police car, he “abruptly changed directions and went to walk quickly away.” Unlike Morgan, the incident did not take place in early morning hours or in a dimly lit area; rather, it occurred around 4:00 in the afternoon. However, also unlike Morgan, the area in which the defendant was stopped was |innoted to be a high-crime area. This factor, coupled with the defendant’s flight, gave rise to a reasonable suspicion that warranted an investigatory stop.
We find the facts of this case to be similar to those of State v. Loeb, 09-341 (La.App. 5 Cir. 2/23/10), 34 So.3d 917. In Loeb, officers patrolling a high-crime area, entered a courtyard where five men were talking. Upon seeing the officers (who were dressed in black raid vests), two of the men starting running from the scene. The officers pursued and eventually caught the defendant, who, during the chase, discarded a plastic bag which was later determined to contain 27 individual foils of heroin. The defendant moved to suppress the evidence (and a statement confessing to selling heroin) on the basis that the officers had no reasonable suspicion to make an investigatory stop because they did not see the defendant engage in any criminal activity.
Rejecting the defendant’s argument, the Fifth Circuit held that the defendant’s “unprovoked flight at the sight of two police officers in a high-crime area gave the police officers reasonable suspicion to conduct an investigatory stop.” Id., 09-341, p. 10, 34 So.3d at 924. See also State v. Ganier, 591 So.2d 1328, 1330 (La.App. 4th Cir.1991) (“[ajlthough an innocent individu *1016 al who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.”).
Based on the foregoing, we find that the totality of the circumstances warranted a reasonable suspicion by Officer Kendrick that the defendant was engaged in criminal behavior and further warranted an investigatory stop. | n Likewise, as this Court has already determined, the odor of marijuana emanating from the defendant gave Officer Kendrick probable cause to search the defendant. Defendant’s assignment of error is without merit.
We further find no merit in the defendant’s contention that the trial court failed to consider Officer Kendrick’s credibility as it related to his testimony that he smelled the marijuana found in the defendant’s pocket. While the trial court did not expressly state whether it found Officer Kendrick’s testimony to be credible, implicit in its determination of the defendant’s guilt is a finding that he was, in fact, credible. Necessarily, a conviction is based on the facts presented to the trier of fact and an acceptance of the facts as presented by the prosecution, which in turn depends on the credibility of the witnesses. See, e.g. State v. Jenkins, 98-2772, p. 4 (La.App. 4 Cir. 3/15/00), 759 So.2d 861, 864 (“[a]ll of the inconsistencies in the testimony of the prosecution witnesses were brought to the attention of the jury, and the jury must have found the testimony sufficiently consistent and credible in finding both defendants guilty as charged. Neither defendant has shown that the jurors abused their discretion in their credibility finding.”).
In this matter, the trial court’s determination of the defendant’s guilt was based solely on Officer Kendrick’s testimony, as he was the only witness at trial. It follows, therefore, that the trial court accepted his testimony as credible. We note, too, that credibility determinations are subject to a manifest error standard of review. See State v. Robinson, 09-0409, p. 6 (La.App. 4 Cir. 8/19/09), 19 So.3d 520, 524. The defendant has not demonstrated that the trial court’s credibility determination in this matter was manifestly erroneous.
Accordingly, this assignment of error is without merit.
| ^CONCLUSION
Based on the foregoing, we affirm Walter J. Robertson’s conviction and sentence.
AFFIRMED.

. The defendant was ordered to pay $250.00 to the Indigent Defender Transcript Fund, $276.50 in felony court costs and $573.00 in misdemeanor/felony costs.

. As is our practice, we reviewed the record and found no errors patent.

. We note, though, that in its writ disposition, this Court commented that "Officer Kendrick found this action [abruptly chang[ing] directions and ... walkfing] quickly away] by the defendant to be suspicious and elected to conduct an investigatory stop.” Robertson, unpub., 13-0646, pp. 1-2 (unpub.). For purposes of this opinion, however, we will not assume that this commentary is an express finding that the stop was lawful.

. The full text of La.C.Cr.P. art. 215.1 A provides as follows:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.