Rosemary Ledet, Judge.
hln this criminal appeal, the defendant, Zachariah Lewis; seeks review of his convictions and sentences for possession of cocaine and attempted battery of a police officer. For the reasons that follow, we *26 affirm his conviction for possession of cocaine, and amend his sentence on that offense to delete the prohibition of parole eligibility and affirm the sentence as amended. -We convert Mr. Lewis’ appeal from the conviction for attempted battery of a police officer to an application for supervisory writ, grant the writ, and vacate the conviction'and sentence.

STATEMENT OF THE CASE

On October 23, 2013, the State filed a bill of information charging Mr. Lewis with the following offenses:
• Possession with the intent to distribute cocaine, in violation of La. R.S. 40:967(B)(1);
• Battery of a police officer, in violation ofLa.R.S. 14:34.2; and
• Resisting an officer, in violation of La. R.S. 14:108.
On November 8, 2013, Mr. Lewis was arraigned; he pled not guilty.
|2On December 18, 2013, Mr. Lewis filed various motions, including motions to suppress evidence, statement, and identification. On May 9, 2014, the district court held a hearing on Mr. Lewis’ motions to suppress evidence and statement.,. After the hearing, the district court took the matters under advisement. On May 19, 2014, the district court found probable cause and denied the motions to suppress. Mr. Lewis’ writ application seeking review of this ruling was denied as untimely. State v. Lewis, 14-0634 (La.App. 4 Cir. 6/26/14) (unpub.).
On June 12, 2014, a competency hearing was held; and the district court found Mr. Lewis competent to proceed. On July 16, 2014, a twelve-person jury trial was held on the charge of possession with the intent to distribute cocaine. Simultaneously, a judge trial was held on the misdemeanor charges of battery of a police officer and resisting an officer. On that same day, the jury found Mr. Lewis guilty of the lesser offense possession of cocaine, and the district court judge found him guilty of the misdemeanor offense of attempted battery, of a police officer and resisting an officer.[1]
'On'August 7, 2014, the district court denied Mr. Lewis’ motion for new trial and motion for post-verdict judgment of acquittal. On August 12, 2014, the district court sentenced Mr. Lewis as follows: five years at hard, labor for possession of ^cocaine; ninety days for the attempted battery of a police officer; and ninety days for resisting an officer; and these sentences to be served concurrently.
. On September 3, 2014, the State filed- a habitual offender bill of information, alleging that Mr. Lewis was a fourth felony offender. Mr, Lewis subsequently filed a motion to quash. Following a hearing, the district court adjudicated Mr. Lewis a third felony offender. The district court vacated the original sentence and resen-tenced Mr. Lewis to ten years at hard labor without benefit of probation,' parole, or suspension of Sentence. This appeal followed.

STATEMENT OF THE FACTS

On May 14, 2013, in the late morning, Detective Cory Foy, a Fourth District narcotics officer of the New Orleans Police Department (“NOPD”), was on proactive patrol in New Orleans. Detective Foy was following NOPD Detectives Terrence Hilli-ard and Christopher Pugh, who were in another police unit. As they neared the *27 intersection of Slidell Street and, Nunez Street, Detective Hilliard and Detective Pugh noticed the driver and the passenger, in a taxi cab were not wearing seatbelts;' The detectives thus decided to conduct a traffic stop. Although he did nofe.see the' seatbelt violation from his vehicle, Detec-tiYe Poy observed the other detectives activate the lights and sirens on their vehicle and pull, over the taxi cab. He followed the other detectives and pulled over to the side of the road.
Detective Foy approached the passenger’s side of-the vehicle, where Mr. Lewis was sitting, while the other detectives approached the driver’s side. Detective Pugh asked the driver, Chanel Lee, for'her identification, the vehicle’s 1 registration^ and proof of insurance. Meanwhile, Detective Foy asked Mr, Lewis for his identification.[2] When Mr. Lewis advised that he could not produce any identification, Detective Foy asked him to exit the vehicle and to verbally provide his name aiid date of birth. ■"*'
According to Detective Foy, ,¾⅞ Mr.; Lewis exited the vehicle, he kept sticking his hands into the coin pocket in his pants, I)etective Foy also noticed about one. inch of a plastic sandwich bag protruding, from Mr. Lewis’ pocket. Detective Foy asked Mr. Lewis what was in his pocket” and repeatedly asked him to stop reaching into his pocket. When Mr. Lewis failed tp comply, Detective Foy placed him in handcuffs for safety purposes. At that time, Detective Foy advised Mr. Lewis ‘.of his Miranda rights.[3] Mr. Lewis nodded, indicating that he understood his rights.
Detective Foy informed Mr. Lewis that he was under investigation for a possible narcotics violation. According to -Detective: Poy, Mr. Lewis then stated that he had “bunk” in his pocket, meaning it was fake narcotics that he occasionally sells. Detective Foy testified that Mr. Lewis offered to allow the detectives to test the substance. When Detective Foy retrieved the bag from Mr. Lewis’ pocket, he observed that it was two bags — one bag contained three individually wrapped pieces of an off-white substance and the other bag contained six pieces of the same individually wrapped substance. Detective Foy testified that ¡ she had seen “bunk” twenty-five to thirty times. According to Detective Foy, the substance retrieved from Mr. Lewis did not resemble “bunk;”[4] rather, it appeared to be crack cocaine. Based on the number of individually wrapped rocks and Mr. Lewis’ admission that he occasionally sold “bunk,” Detective Foy advised Mr. Lewis that he was under arrest for possession with the intent to distribute cocaine. , Detective Foy conducted a search incident to arrest and found $60.00 in cash in Mr. Lewis’ pocket.. He also found a Louisiana identification card stating Mr. Lewis’ name and information.[5]
As Detective Foy was stepping around the vehicle .to give the substance to Detective HJlliard for testing, Mr. Lewis slipped one of his . hands out of the handcuffs and fled down Nunez Street. Detective Foy and Detective Hilliard ran after Mr. Lewis.[6] After running about half a block, Mr. *28 Lewis turned into a driveway and jumped a low fence. Detective Hilliard testified that he managed to grab ahold of Mr. Lewis’ shirt, but Mr. Lewis maneuvered out of the multiple shirts he was wearing. Detective Hilliard further testified that Mr. Lewis then struck him in the face and continued running. The detectives were able to apprehend Mr. -Lewis at the back of the yard when he attempted to scale a tall wooden fence.
|fiAs the detectives walked him back to the police vehicles, Mr. Lewis complained, of chest pains, of having difficulty breathing, and of being hot.[7] The detectives called for an EMS unit, and they laid Mr. Lewis in the back of a police unit to await its arrival. . Detective Hilliard testified that he believed that someone poured water on Mr. Lewis’ back to help cool him off. Detective Foy and Detective Hilliard testified that Mr. Lewis was conscious when EMS personnel arrived, although they did not hear or recall if Mr. Lewis responded to the EMTs.
Luke Price, the EMT who responded to the call, testified that he made an assessment of Mr. Lewis’ condition, took his vital signs, and administered an IV line. He stated that while Mr. Lewis did not speak to him during the treatment, he was conscious, and it appeared that Mr. Lewis chose not to speak. Mr.. Price did not notice any physical trauma on Mr. Lewis’ body, and he stated that he could not find anything wrong with Mr. Lewis.' Mr. Price subsequently transported Mr. Lewis to the hospital, and Detective Hilliard rode in the ambulance with them.
Mr. Lewis was admitted to the hospital for respiratory stress and possible seizures and remained there for a few days. Mr. Price stated that once Mr. Lewis arrived at the hospital, tubes were put down his throat.- The detectives subsequently obtained an arrest warrant for Mr. Lewis. On August 24, 2014, Mr. Lewis was arrested.
. |7At trial, the State and the defense stipulated that the NOPD Crime Lab tested the substance seized from Mr. Lewis, and that it v?as positive for cocaine.
Edward Sherman testified at trial that he lived in the house where the detectives captured Mr. Lewis. He stated that he was inside the house when he heard someone shaking the back door. As Mr. Sherman picked up a gun and headed toward the door,' he heard a loud thump against something metal. He then heard voices, but he could not distinguish any words. As Mr. Sherman looked through the shutters on his windows, he observed people walking. toward the front of his house. Mr. Sherman then opened his front door and observed two men walking away while holding a third man between them. At trial,.Mr. Sherman identified photographs of his'house and yard. On cross-examination, he stated that the officers returned to his house after taking the man away and offered to have his fence fixed.
The sole defense witness at trial was Ms. Lee, Mr. Lewis’ girlfriend of seven years. She testified that she and Mr. Lewis --were driving to get breakfast on May 14, 2013 when she observed four po- ■ lice units approaching her as she came to a stop at a stop sign. Ms. Lee testified that after handing over her driver’s license and car’s registration, the officer “slammed” it back in her vehicle and told her to get out *29 of the car or he would get “the dogs.”’ Once she exited the vehicle, Ms. Lee stated that she was handcuffed and told to' stand at the back of the vehicle. Aftér stating that she did not know why she was stopped, Ms. Lee testified that one officer pointed to someone and said that '“she” told him that something was in- the |Rcar. Although Ms. Lee denied there was any*: thing in the car, she claimed ¡thaL -the detectives searched it anyway. Ms. Lee was issued a citation for failure to wear a seatbelt.
Ms. Lee testified that she heard the detective ask Mr. Lewis to exit the vehicle. At that point, she recognized Detective Hilliard, who arrested her in 20Í0 for possession of crack cocaine and marijuana, to which she pled guilty.[8] Ms. Lee testified that Detective Hilliard called her by name, showed her $60.00 in cash, and told her that it was hers. She claimed,- however, that the $60.00 found on Mr. Lewis was from his social security check. :>
She denied that Mr. Levas fled the scene or that he ran to a house on Nunez Street. According to Ms. Lee, three or four officers started hitting Mr. Lewis in the face and chest; she denied seeing Mr.' Lewis hit any officers. She testified that the officers threw him in the back seat of her vehicle and poured water on him to revive him. She stated that when the EMTs arrived, one of the EMTs asked the officers what they had done to Mr. Lewis. She testified that she did not know if Mr. Lewis was alive or dead at that point.
After Mr. Lewis was taken to the hospital, Ms. Lee stated that Detective Hilliard reached into a slit in her jeans, removed money and marijuana, and told her that she was going to jail. She insisted that there was no cocaine on the scene. •
|aMs. Lee stated that although Mr. Lewis was in a wheelchair at the time of trial, he did not use a wheelchair at the time of his arrest. She claimed, however, that at the time of this incident, Mr. Lewis was disabled' and could not walk far. He subsequently broke his hip, and he had a degenerative joint in his foot.

DISCUSSION

Errors Patent

As we routinely do, we have reviewed the record on appeal for errors patent and found two. First, the transcript of the sentencing on the multiple bill indicates that the district court imposed the prohibition of probation, parole, or suspension of sentence.. At the sentencing hearing, the district court judge, stated “... sentence again is 10 years as a third offender under 15:529.1. The sentence is' without benefit of probation, parole, or suspension of sentence. It does not mean that he can not [sic] be paroled.” The June 18, 2015 minute entry of the sentencing on the multiple bill, however, does not include these prohibitions.
It is unclear if the court imposed the sentence without benefit of parole — which would be in error, as neither La. R.S. 40:967 nor La. R.S. 15:529.1 prohibits parole eligibility — or if the court was merely commenting that generally a defendant is not eligible for parole if he has three felony convictions. See La. R.S. 15:574.4 A(l)(a). Accordingly, we amended Mr. Lewis’ sentence to delete the prohibition of parole eligibility and affirm the sentence as amended.
The second error patent involves Mr. Lewis appeal of his attempted misdemean- or battery conviction. Art. V, § 10 of the 1974 Louisiana Constitution |inIimits the *30 criminal appellate jurisdiction of this court to cases triable by a jury. A defendant charged with a misdemeanor, other than those where the maximum sentence exceeds six months imprisonment ,or a $1,000.00 fine, shail be tried by the court alone. La.C.Cr.P. art. 779.. Mr. Lewis was charged with misdemeanor battery of a police officer, which under La. R.S. 14:34.2(B)(1), carries a sentence of a fine of no more than $500.00 and imprisonment for no less than fifteen days nor more than six months without benefit of suspension of sentence.' Thus, there is no right of appeal from the attempted battery conviction. See State v. Gaubert, 15-0774 (La.App. 4 Cir. 12/9/15), 179 So.3d 982, 2015 WL 8520893. Nonetheless, we convert Mr. Lewis’ appeal from the conviction for attempted battery to an application for supervisory writ. See State v. Walker, 05-0876 (LaApp. 4 Cir. 3/15/06), 929 So.2d 155; La.C.Cr.P. art. 912.1.

Assignment of Error Number One

In his first assignment of error, Mr. Lewis contends that the district court erred by denying his motion to suppress evidence and statement. While Mr. Lewis concedes "’that the detectives lawfully stopped Ms. Lee’s vehicle for the seatbelt violation, he argues that the detectives’ search and seizure of his person were unreasonable. First, he contends that the detectives had no basis to order him out of the vehicle.[9] Second, Mr. Lewis contends that the detectives lacked a reasonable 1 nsuspicion to detain and to question him. Third, Mr. Lewis contends that the detec-fives lacked cause to. search and arrest him. He further contends that the district court erred in denying his motions to.suppress, be,cause his statement and the seizure . of the cocaine from his pocket, were the result of an illegal detention..,

Suppression of Evidence

When evidence is seized without a warrant, the State has the burden of proof to show that it was lawfully seized. See La.C.Cr.P. art. 703(D). It is well-settled that an appellate court should afford great weight to a district court’s findings of fact based on the credibility of evidence, but its legal findings are subject to a de novo standard of review. State v. Thompson, 11-0915 (La.5/8/12), 93 So.3d 553; State v. Wells, 08-2262 (La.7/6/10), 45 So.3d 577; State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746.
First, Mr. Lewis contends that the district court erred in denying his motion to suppress evidence because the detectives had no reasonable basis to order him out of the vehicle during the traffic stop. It is well-settled that once officers make a valid traffic stop, they are justified in ordering the driver and the passengers out of the vehicle for safety reasons. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); State v. Cure, 11-2238 (La.7/2/12), 93 So.3d 1268; State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746; State v. Landry, 588 So.2d 345 (La.1991). “[B]oth the U.S. Supreme Court and the Louisiana Supreme Court have recognized that an officer making a traffic stop may order the driver (as well *31 as passengers) out of a h ¿vehicle- pending completion of the stop.” State v. Gomez, 06-417, pp. 6-7 (La.App. 5 Cir.. 11/28/06), 947 So.2d 81, 85.
Detective Foy was the sole witness to testify at the suppression hearing, and his testimony was substantially the same as the testimony he gave at trial. ' He testified that he first encountered Mr. Lewis during a traffic stop after other detectives observed Ms. Lee and Mr. Lewis were not wearing seatbelts. Although Detective Foy did not see the traffic violation, he testified that the detectives he was following on that date observed the seatbelt violation.[10] Detective Hilliard confirmed at trial that he did see the violation and that he initiated the stop, and Detectivé Pugh issued Ms. Lee a citation for failure to wear a 'seatbelt.
Detective Foy testified that since Mr. Lewis had ho identification, he asked him to exit the vehicle for officer’s safety and to verbally advise of his name and date of birth. Both Detective Foy and Detective Hilliard testified that they were concerned for their safety when Mr. Lewis could not provide his identification. Detective Foy also testified that it was common practice for officers to ask occupants of a Vehicle to exit during a traffic stop for officer’s safety if the occupants are unable to show any identification. Although Mr. Lewis argues that there was no need to order him out of the vehicle merely to write Ms." Lee a citation, the jurisprudence has held that detectives are authorized to order an occupant, such as Mr. Lewis, from the vehicle during a traffic stop.
11sMr. Lewis also points out that the detectives did not testify that they saw or smelled drugs. Nor did the detectives witness any other criminal activity. Mr. Lewis, however, claims that Petective Hilliard knew and recognized him; thus, he contends there was no basis to order him out of the vehicle for his lack of any identification. A review of the record reveals, - however, that there was no testimony showing that Detective Hilliard was familiar with Mr. Lewis. Rather, Ms. Lee testified that Detective Hilliard knew her, not Mr. Lewis.
Second, Mr. Lewis contends that the detectives did not have a reasonable suspicion, that he was involved in any criminal activity to detain and question him.
An officer may stop a person and question him if the officer has reasonable suspicion that the person has committed or is about to commit an offense. La.C.Cr.P. art. 215.1; State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856; see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Robertson, 13-1403 (La.App. 4 Cir. 4/9/14), 136 So.3d 1010. Only reasonable , suspicion — hot probable cause" needed to arrest a defendant — is necessary to support an investigatory stop. Ah officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Temple, 02-1895 at p. 4, 854 So.2d at 859-60; see also Robertson, supra.
In assessing the reasonableness of an investigatory stop, this court has stated as follows:
“[T]he court must balance the heed for the stop against the invasion of privacy it entails” and consider the totality of the circumstances “in determining *32 whether reasonable suspicion exists.” [State v.] Williams, 07-0700, p. 11 [ (La.App. 4 Cir. 2/13/08)], 977 So.2[1101] at 1111. An “officer’s past experience, training and | ucommon sense may be considered in determining if his inferences from the facts at hand were reasonable,” and “[d]eference should be given to the experience of the officers ... present at the time of the incident.” Id., 07-0700, pp. 11-12, 977 So.2d at 1111.
Robertson, 13-1403 at p. 7, 136 So.3d at 1014. Furthermore, a reviewing court must look at the totality of the circumstances to determine if an officer has reasonable suspicion to stop a suspect. Temple, 02-1895 at p. 5, 854 So.2d at 860. “Although reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment requires some minimal level of objective justification for making the stop.” State v. Morgan, 09-2352, p. 4 (La.3/15/11), 59 So.3d 403, 406 (citing United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). The Louisiana Supreme Court has noted that several factors are particularly relevant, including the location and time of the stop, and the defendant’s actions preceding the stop. Morgan, 09-2352 at p. 5, 59 So.3d at 406; see also State v. Boyles, 14-1126 (La.App. 4 Cir. 2/4/15), 157 So.3d 1170.
According to Detective Foy, once Mr. Lewis exited the vehicle, Mr. Lewis repeatedly tried to put his hand into his pocket, despite Detective Foy repeatedly asking him not to do so. Detective Foy testified that he saw about one inch of a plastic sandwich bag protruding from Mr. Lewis’ pocket. Detective Foy testified that based on his experience and participation in narcotics investigations for several years, he observed that narcotics were commonly stored and transported in sandwich bags. Detective Foy then handcuffed Mr. Lewis, advised him of his Miranda rights, and advised him that he was under investigation for a possible narcotics violation.
|TjsIn support of his argument, Mr. Lewis attempts to distinguish State v. Young, 02-1073 (La.App. 4 Cir. 6/4/02), 820 So.2d 1182, in which this court upheld a district court’s denial of a motion to suppress. In Young, the defendant was stopped for a seatbelt violation; and as he exited his vehicle with his hands in his sweatshirt pocket, an officer saw a bag containing what appeared to be marijuana hanging out of the defendant’s pocket. Mr. Lewis argues that Young is distinguishable from this case, because the officer in Young could see drugs in the bag hanging out of the defendant’s pocket. Yet, here, Detective Foy could only see a bag in Mr. Lewis’ pocket. However, because the officer in Young could see drugs in the bag, this court found that the officer had probable cause to arrest the defendant at that point. Here, by contrast, Detective Foy only needed reasonable suspicion to detain Mr. Lewis after he exited the vehicle. Given Detective Foy’s experience in narcotics investigations and his observations of Mr. Lewis repeatedly sticking his hand in his pocket which contained a small plastic sandwich bag, the district court did not err by finding that Detective Foy had reasonable suspicion of criminal activity to detain Mr. Lewis.
Third, Mr. Lewis contends that the district court erred in denying his motion to suppress evidence because the State failed to prove the detectives had reasonable cause for the warrantless search and arrest. In support, Mr. Lewis argues that by putting him in handcuffs and advising him of his Miranda rights, Detective Foy elevated the investigatory stop to an arrest. In order to arrest him, *33 he emphasizes that Detective Foy needed probable cause to believe that''he ’whs [1fiengaged in criminal activity. In support, Mr. Lewis cites State v. Creecy, 98-1472 (La.App. 4 Cir. 7/14/99), 742 So.2d 615. In that case, this court held that by-handcuffing the defendant, advising him of his Miranda rights, and informing him he was under investigation for drug trafficking, the officer placed him under arrest. In Creecy, the State, however, conceded that the defendant was under arrest. Furthermore, this court based its ruling on the fact that the defendant was “clearly” mot free to leave.[11]
Moreover, the Louisiana Supreme Court has refused to hold that the fact an officer gave the defendant his Miranda rights elevated the stop to an arrest; rather the Louisiana Supreme Court has ruled, as follows:
We do not find that the nature of the investigatory stop was turned into an arrest when [the officer] read the detained men their constitutional, rights. [The officer] testified the standard' operating procedure was to Mirandize all persons detained or arrested. . We find this procedure comports with La. Const, art. 1, § 13. In addition, we cannot fault the officer for providing Thompson with greater protection than he mighl; otherwise have had in an investigatory, stop.
Thompson, 11-0915 at p. 24, 93 So.3d at 570.
117Here, Detective Foy testified that he handcuffed Mr. Lewis only after he repeatedly tried to put his hand into his coin pocket, despite the detective’s orders not to do so, and after the detective noticed a piece of sandwich bag sticking out of the top of that pocket. Given these circumstances, Detective Foy was justified in handcuffing Mr. Lewis at that point. In addition, as in Thompson, Detective Foy’s advising Mr. Lewis of his Miranda rights and that he was under investigation for a possible drug violation did not elevate the stop to an arrest.
Furthermore, once Mr. Lewis indicated that he understood his rights, Detective Foy asked him why he kept putting his hand into his pocket and what was in that pocket. Mr. Lewis replied that it was “bunk” that he sold from time to time. Detective Foy testified at the suppression hearing that Mr. Lewis suggested that he be released because the bag did not contain any drugs. At trial, D.etective Foy testified that Mr. Lewis offered to allow the detective to test it. Mr. Lewis’ admission that he had a bag of “bunk” that he sometimes sold gave Detective Foy probable cause to arrest him for a violation of La. R.S. 40:971.1.[12] Although Mr. Lewis *34 was not actually arrested at that time, Detective Foy had probable cause to do so. Incidental to the probable cause to arrest, Detective Foy could seize the bag. See State v. Parker, 06-0053 (La.6/16/06), 931 So.2d 353; see also State v. Mathieu, 07-1579 (La.App. 4 Cir. 6/25/08), 988 So.2d 803 (holding that sufficient probable cause existed to arrest defendant so as to warrant search incident to his | 1sarrest.); State v. Gray, 11-1356 (La.App. 4 Cir. 10/3/12), 101 So.3d 515 (finding that if probable cause to arrest defendant existed, then a full search was permitted pursuant to arrest.).
After Detective Foy seized the bag, he recognized the substance inside as crack cocaine, not “bunk.” Given the number of individually wrapped rocks of crack and Mr. Lewis’ admission that he sometimes sold “bunk,” Detective Foy arrested him for possession with the intent to distribute cocaine. Incidental to this arrest, he lawfully seized currency and Mr. Lewis’ State identification.
Based on these circumstances, the district court did not abuse its discretion in denying Mr; Lewis’ motion to suppress the evidence.

Suppression of Statement

Mr. Lewis contends that the district court erred in denying his motion to suppress statements because the statement was the result of improper, prolonged detention, and his arrest. In support of this argument, Mr. Lewis alleges that there was a long detention when the detectives searched Ms. Lee’s vehicle before ordering Mr. Lewis to exit. Mr. Lewis further argues that officers may not search a vehicle incidental to the issuance of a citation.
• As discussed aboye, Mr. Lewis was not under - arrest at the time that he made these statements; rather, he was being investigated for a narcotics violation. Moreover, the record is devoid; of any in,di-cation that Mr. Lewis’ detention was prolonged.. Ms. Lee was the only witness who testified that the detectives searched her .vehicle. She also insisted that Mr. Lewis did not run from the vehicle, but she 11flclaims that he was beaten so badly by the detectives that the EMT who arrived on the scene asked what the police had done to him. .
By contrast, Mr. Sherman testified that he heard commotion in his back yard. He heard voices, but he could not distinguish any words. Mr. Sherman testified that he observed people walking toward the front of his house. When he walked to the front door, he saw two men walking from his back yard, holding onto a third man who was walking between them. He also testified that the fence to his back yard had been damaged'.' Furthermore, Mr. Price, the EMT, testified that he did not notice any evidence of physical trauma on Mr. Lewis when he examined him at the scene.
Given the totality of circumstances and the evidence presented, we find that the district court did not abuse its discretion in denying Mr. Lewis’ motions to suppress. There is no merit to this assignment of error. Accordingly, Mr. Lewis’ conviction for possession of cocaine is affirmed.

Assignment of Error Number Two

In his second assignment of error, Mr. Lewis contends that the district court erred by convicting him of attempted misdemeanor battery of a police officer because there is no crime of “attempted battery” in Louisiana. Rather, an attempted *35 battery is an assault. See State v. Mayeux, 498 So.2d 701 (La.1986); State v. Lambert, 14-1138 (La.App. 4 Cir. 2/25/15), 160 So.3d 1097 (finding that “‘attempted aggravated second degree battery" is not a valid crime as defined by the Louisiana Criminal Code.”); State v. Arita, 01-1512 (La.App. 4 Cir. 2/27/02), 811 So.2d 1146 (noting that attempted second degree battery is not a recognized crime in Louisiana, “because an attempt to commit a battery is an assault.”); State v. Nazar, 96-0175 (La.App. 4 Cir. 5/22/96), 675 So.2d 780 (noting that attempted simple batteiy is not a crime in Louisiana; rather an attempted simple battery is a simple assault). The State concedes that there is no crime of “attempted batteiy” imLoufep ana and that the district court’s finding Mr. Lewis guilty for attempted battery of a police officer should be reversed.
As noted earlier, we convert Mr. Lewis! appeal from the conviction for attempted battery to an application for supervisory writ, we grant the writ, and vacate'the conviction and sentence for attempted battery of a police officer. -⅜ >

DECREE

For the foregoing reasons, Mr, Lewis’ conviction for possession of cocaine is affirmed, but his sentence is amended to delete the prohibition of parole eligibility. Mr. Lewis’ appeal from the conviction for attempted battery of a police officer is converted to a writ,,the writ is granted,, and the conviction and sentence are vacated. For the foregoing reasons,
APPEAL OF CONVICTION FOR FELONY OF POSSESSION OF COCAINE AFFIRMED, SENTENCE AMENDED, AND AFFIRMED AS AMENDED. , .
APPEAL OF CONVICTION FOR MISDEMEANOR ATTEMPTED BATTERY CONVICTION CONVERTED TO WRIT, WRIT GRANTED, AND CONVICTION AND SENTENCE VACATED,

. Although the original minute entry stated that the district court found Mr, Lewis guilty as charged on the battery count, the amended minute entry dated August 13, 2014' reflects that Mr. Lewis was found guilty of attempted battery on a police officer. In addition, the sentencing transcript reflects that the court found him guilty of attempted battery on a police officer, and the parties agreed this was the verdict.

. On cross-examination, however, Detective Foy stated that Detective Pugh initially asked Mr. Lewis to produce his identification.-.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Detective Foy testified that "[j]ust based on the texture' and the look of it. Usually when people sell bunk its usually like shavings of soap.”

. Detective Foy testified that Mr. Lewis was not in possession of any paraphernalia for consuming crack cocaine.

. On cross-examination, Detective Foy testified that at some point after Mr. Lewis fled, ■ *28 one of the other detectives called for backup, and two other officers arrived on the scene.

. On cross-examination, both Detective Foy and Detective Hilliard denied that any of the officers hit Mr, Lewis. Detective Foy admitted that there was a brief "tussle” with him when they apprehended him at the back fence and put the handcuffs back on him.

. On cross-examination, Ms. Lee admitted that she also had convictions for theft of an automobile and for possession of a stolen automobile.

. Although Mr. Lewis agrees the initial stop was lawful, he suggests that stop was merely a pretext because Detective Hilliard knew Ms. Lee, having previously arrested her. He further asserts that the district court could have found that the officers manipulated the minor traffic violation into a confrontation to harass them and possibly find evidence of criminal activity, Nonetheless, Mr. Lewis concedes that even a pretextual stop is not unlawful if there is an otherwise lawful basis for it; an officer’s subjective motivation for the stop is not controlling. See Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Hall, 14-0738 (La.App. 4 Cir. 2/18/15), 160 So.3d 1060; State v. Norals, 10-0293 (La.App. 4 Cir. 7/30/10), 44 So.3d 907.

. See State v. Shirley, 08-2106 (La.5/5/09), 10 So.3d 224 (holding that hearsay testimony is admissible at a suppression hearing). ■ ’

. The continued viability of Creecy is unclear given the subsequent actions of this court, and the Louisiana Supreme Court. See State v. Thompson, 11-0915 (La.5/8/12), 93 So.3d 553 (holding that while the use of handcuffs-escalates the use of force used to detain a defendant, the use of handcuffs themselves does not automatically transform 'a stop into an arrest; each case must turn on its facts.); State v. Palmer, 09-0044 (La.7/1/09), 14 S.o.3d 304 (holding that the defendant was nqt under arrest even though officers handcuffed and detained him when they executed a search warrant for a residence where he was found.); State v. Porche, 06-0312 (La. 11/29/06), 943 So.2d 335 (finding that that the defendant was not under arrest even though officers detained the defendant, placed him in handcuffs, and took him from the scene of a crime to his apartment to allow him to retrieve his identification.); State v. Barabin, 13-0334 (La.App. 4 Cir. 9/11/13), 124 So.3d 1121 (finding that officers investigating a burglary did not make a custodial arrest when they handcuffed the defendant inside his own residence after he began pacing and walking toward a storage room.).

. La. R.S. 40:971.1 prohibits the possession with the intent to distribute "any substance which is represented to be a controlled dangerous substance and which is an imitation *34 controlled dangerous substance, or any controlled dangerous substance which is a coun-terféit controlled dangerous substance.”